UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KATHERINE MARIA PINNER,    )
    )
    Plaintiff,    )
    )
    v.    )    No. 4:22 CV 870 CDP
    )
AMERICAN ASSOC. OF    )
ORTHODONTISTS,    )
    )
    Defendant.    )

## MEMORANDUM AND ORDER

Plaintiff was working for defendant when the COVID-19 pandemic struck in 2020.  Like many Americans, she then began working remotely; however, when plaintiff was later required to attend an in-person work conference in July of 2021 (CCON)[1] and either wear a mask or provide proof of vaccination, she objected on religious grounds and requested an accommodation.[2]   Defendant initially indicated that plaintiff could attend the conference virtually, but that permission was withdrawn the evening before the conference was scheduled to start and she was ordered to attend certain events in person and wear a mask.  Plaintiff then

---

[1] CCON took place from Friday, July 30, 2021 to Sunday, August 1, 2021 in the City of St. Louis, which was under a public health order requiring everyone to wear a mask to prevent the spread of COVID-19.

[2] She requested to be exempt from wearing a face covering and/or attending the event in person.

resigned.  This lawsuit, alleging religious discrimination and retaliation in violation of Title VII, followed.

Defendant moves for summary judgment on the amended complaint, arguing that plaintiff cannot establish that her religious beliefs were sincerely held, she did not suffer an adverse employment action, and compliance with her requested accommodation would place an undue hardship on defendant.  Plaintiff, who is representing herself in this case, has submitted documents and a memorandum in opposition to summary judgment.  In moving for summary judgment, defendant has mischaracterized the evidence regarding the timing of plaintiff's resignation and the parties' communications, and has relied on out-of-circuit and outdated legal authorities.  I will deny the motion as it relates to plaintiff's religious discrimination claims.

Plaintiff has presented no evidence that she opposed a practice made unlawful by Title VII, however, so her retaliation claim fails as a matter of law. Her religious discrimination claims will proceed to trial.

<u>Standards Governing Summary Judgment</u>

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of*

*Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).  I must view the evidence in the light most favorable to the nonmoving party and accord her the benefit of all reasonable inferences.  *Scott v. Harris,* 550 U.S. 372, 379 (2007).  My function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of informing the Court of the basis of its motion and demonstrating the absence of an issue for trial.  *Celotex Corp.*, 477 U.S. at 323.  Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248; *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004).  The substantive law determines which facts are critical and which are irrelevant.  *Anderson*, 477 U.S. at 248.  Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.*

In determining a motion for summary judgment, I consider only those facts that can be supported by admissible evidence.  Fed. R. Civ. P. 56(c); *Woods v. Wills*, 400 F. Supp. 2d 1145, 1175-76 (E.D. Mo. 2005).  Testimony that would not be admissible is ignored.  *Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th

Cir. 2003). Accordingly, speculation, personal opinion, and legal conclusions are not "facts" upon which a party may rely for summary judgment purposes. *See Benford v. Grisham*, No. 1:18CV5 JMB, 2020 WL 569871 (E.D. Mo. Feb. 20, 2020). Under these standards I review the facts of this case.

Background Facts[3]

Plaintiff was employed by defendant as its Director of Education from October 14, 2019, through August 11, 2021. Starting in March of 2020, plaintiff worked remotely due to COVID. She attended an in-person work event on October 30-31, 2020, and wore a mask. She did not request a religious exemption or reasonable accommodation from wearing a mask at that time.

On May 20,2021, defendant announced that if employees were vaccinated, they did not need to wear a mask when they were in the office. The remote work policy, however, remained in effect until at least January of 2022, and plaintiff continued to work remotely until her last day of employment.

In June of 2021, plaintiff was notified that CCON would be held in person. Participants, including plaintiff, were told that they would either to need to wear a mask or be vaccinated to attend. Thereafter, starting on June 15, 2021, plaintiff repeatedly told defendant that wearing a mask violated her strongly held religious

---

[3] These factual findings are for summary judgment purposes only, and neither party may rely on this Memorandum and Order to establish any fact at trial.

beliefs as a traditional Christian, Croatian Roman Catholic to cover her face, nose, mouth, and/or restrict her breathing/airway and requested an accommodation from the policy of wearing a mask for the event.[4]  ECF 69-8, 69-9, 69-11.  These emails included numerous references to scripture from the Christian Bible to support her beliefs.  *See e.g.*, ECF 69-9 (quoting Genesis 1:27, 2:7, 6:17; Job 27:3, 23:4, 37:10, 12:10; Psalm 33:6, 34:2, 150:6; Isaiah 42:5; John 20:22).  On June 29, 2021, defendant responded by demanding that plaintiff provide "documentation from one of your religion's spiritual leaders about the nature of the accommodation needed." ECF 69-10.  In response, plaintiff provided a link to an online sermon from Archbishop Fulton Sheen.  ECF 73 Pl's Ex. B-25.

Defendant suggested getting the COVID vaccine as an accommodation to wearing a mask or "not wear[ing] the mask while working at home" alone.  ECF 69-10, 69-12.[5]  In response, on July 7, 2021, plaintiff emailed defendant that she was unable to participate in "face coverings/injections that go against my religion, religious beliefs" and stated that she "hoped pressure will not be applied in regard to face coverings/injections that go against my religion, religious beliefs."  ECF

---

[4] Her request for accommodation also extended to in-person work at the office, but as it is undisputed that she was not required (and in fact did not) return to the office before her employment ended, this fact is not material to the motion before the Court.  She also raised health concerns and requested a medical accommodation, but that was also denied and is not the subject of the instant litigation.

[5] Defendant also proposed wearing a clear mask, but as it covered "her face, nose, mouth, and/or restricted her breathing/airway," it was not an acceptable accommodation to plaintiff.  Pl.'s Ex. 73 R-8.

69-12 (cleaned up).  Plaintiff then informed defendant on July 14, 2021 that "it is against my religion, strongly held religious belief, to participate in [COVID] injections because it will remove me from the natural immune function and therefore from my God who created me and gave me breath and life."  ECF 69-20 (cleaned up).  She also reiterated her religious objections to wearing a mask.[6]  *Id.* Plaintiff then asked again about attending CCON virtually as an accommodation. *Id.*

On July 22, 2021, Libby Dischert, defendant's Director of Meetings and Sponsorships, sent an email that, among other things stated: "@Pinner, Kay, I understand that you will be joining us remotely.  Please find the Friday and Saturday ZOOM links.  We need you to create the ZOOM links for your Sunday breakouts." (cleaned up).  ECF 73 Pl.'s Ex. R-18.  In emails to plaintiff on July 20, 2021, both Dischert and Vice-President Mindi Brothers had acknowledged that plaintiff was attending remotely.  ECF 73 Pl.'s Ex. B-34.  Brothers admitted that while plaintiff's remote attendance was "possible," it was "not ideal."  ECF 73 Pl.'s Ex. B-34.

---

[6] She wrote: "It is against my religion, strongly held religious belief, and health to cover my face, nose, and/or mouth and/or to restrict my breath/breathing/airway . . .  It is a strong violation of God's will, the Creator who breathed life into my body as breath is life.  To restrict the passage of air into the body which God created would be to deny the divine will of God and to inhibit my connection to God."  ECF 69-20 at 2, 6.

The permission for remote attendance was withdrawn on the afternoon of July 29, 2021, the day before the conference was scheduled to begin.  At 3:13 p.m., Brothers sent plaintiff an e-mail stating in relevant part:

> After considering your role in each of the sessions of the upcoming meeting, the following details **expectations of your attendance**.
>
> Friday and Saturday meetings with CCON can be attended virtually.
>
> Because your role is integral to the Saturday night Staff working dinner, **you must attend in-person.**
>
> Because your sub-committee workshop leadership role is integral to the success of the Sunday workshops, **you must attend in-person**.
>
> **You'll need to follow St. Louis City mask mandates when in-person**.

ECF 73 Pl.'s Ex. B-30 (emphasis added).  In response, at 3:36 p.m. plaintiff resigned, stating that she was "happy to provide two weeks of dedicated, loyal service" to defendant.  *Id.*  The following email exchange between plaintiff and Brothers then took place:

- **4:35 p.m.** Brothers replied by email to "acknowledge your resignation." ECF 73 Pl.'s Ex. B-30.  She stated that she "appreciated you writing you will 'provide two weeks of dedicated, loyal service'" and then sought to "confirm you will be attending CCON in-person at the Saturday night Staff working dinner and in-person at the sub-committee workshop." *Id.* (cleaned up).

- **4:43 p.m.** Plaintiff responded that she was "happy to execute **the remote access strategy that has already been developed which includes a plan for Saturday evening and Sunday workshops."**  ECF 73 Pl.'s Ex. B-30 (emphasis added).

- **5:28 p.m.** Brothers replied: "Thank you for offering to attend virtually but because you are choosing not to attend in-person for the working dinner and leading the Sunday workshops, there's no need.  I'll communicate the change so we can plan accordingly."  ECF 73 Pl.'s Ex. B-30 (cleaned up).

- **5:38 p.m.**  Plaintiff sought to "confirm" by email that she was not required to attend "any portion of the CCON meeting" and stressed that she was "available to attend virtually."  ECF 73 Pl.'s Ex. B-30.

- **8:50 a.m. the next morning (July 30, 2021)** Brothers responded, "For the meeting to be effective, the requirements outlined in my original email stand.  Unfortunately it's not a pick and choose – it's all or nothing to ensure the meeting is a success."  ECF 73 Pl.'s Ex. B-30.

Plaintiff did not attend CCON virtually or in person and continued working remotely until August 11, 2021.  After her employment ended, plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights and the EEOC alleging religious discrimination and retaliation.  After being issued a Right-to-Sue Letter, plaintiff filed a pro se complaint in this Court, which she was granted leave to amend upon her request.  ECF 15, 17.

Plaintiff's operative amended complaint alleges that her employer violated Title VII by discriminating against her and retaliating against her for asserting her religious beliefs.[7]  Defendant moves for summary judgment on plaintiff's amended complaint.

---

[7] The Court dismissed plaintiff's asserted constitutional claims by Memorandum and Order dated March 30, 2024.  ECF 30. In addition to the failure to accommodate and retaliation claims discussed above, plaintiff  also alleges that defendant offered only accommodations that were directly contrary to her religious beliefs, placed undue burdens upon her to request a religious

Discussion

Title VII makes it illegal for any employer to "discharge any individual, or
otherwise to discriminate against any individual with respect to his compensation,
terms, conditions, or privileges of employment, because of such individual's race,
color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The statute
defines "religion" as including "all aspects of religious observance and practice, as
well as belief, unless an employer demonstrates that he is unable to reasonably
accommodate to an employee's religious observance or practice without undue
hardship on the conduct of the employer's business."  *Sturgill v. United Parcel
Service, Inc.*, 512 F.3d 1024, 1029–30 (8th Cir. 2008); *E.E.O.C. v. Kelly Servs.,
Inc.*, 598 F.3d 1022, 1031 (8th Cir. 2010) (citing 42 U.S.C. § 2000e(j)).  Thus,
"Title VII does not demand mere neutrality with regard to religious practices – that
they be treated no worse than other practices.  Rather, it gives them favored
treatment, affirmatively obligating employers not to fail or refuse to hire or

---

accommodation by requiring her to work overtime and provide responses about her requested
accommodation on personal time, and by being harassed and ridiculed and questioned about her
religious beliefs during the process of requesting an accommodation.

Defendant did not move for summary judgment on plaintiff's disparate treatment claims except
as discussed above, so the Court has no occasion to consider whether plaintiff's allegations state
a disparate treatment religious discrimination claim in addition to a failure to accommodate
claim, except to this extent: the documents provided by plaintiff and defendant conclusively
demonstrate that plaintiff was also requesting a medical exemption to wearing a mask in addition
to a religious one, and the requests for medical documentation relate specifically to that request,
not her request for religious accommodation.  Therefore, to avoid unnecessary objections and
confusion at trial, plaintiff must present evidence relating to her religious discrimination claims,
which are the only claims at issue in this case.

9

discharge any individual because of such individual's religious observance and practice." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) (cleaned up).  With respect to an employee's religious beliefs and practices, "Title VII requires otherwise-neutral [employment] polices to give way to the need for an accommodation." *Id.* (alteration added).

Only sincerely held beliefs rooted in religion are protected.  *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000).  But those beliefs do not need to be "acceptable, logical, consistent, or comprehensible to others." *Thomas v. Review Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714 (1981).  Nor do they need to be shared by all members of a religious sect.  *Ringhofer v. Mayo Clinic, Ambulance,* 102 F.4th 894, 901–02 (8th Cir. 2024).  Furthermore, "overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system." *Id.* at 901 (cleaned up).

Religious discrimination Claims

Plaintiff's amended complaint brings claims of religious discrimination, including a failure to accommodate claim, and retaliation.  "A failure to accommodate, while actionable, is not a freestanding cause of action under Title VII." *Cole v. Group Health Plan, Inc.*, 105 F.4th 1110, 1113 (8th Cir. 2024) (cleaned up).  It is, instead, a type of religious discrimination disparate treatment

claim. *Id.* (cleaned up).

In the absence of direct evidence of discrimination, "to establish a prima facie case of religious discrimination, a plaintiff must show: (1) she is a member of a protected class because of her religious beliefs, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Shirrell v. St. Francis Medical Center*, 793 F.3d 881, 887 (8th Cir. 2015) (cleaned up).

To establish a prima facie claim based on a failure to accommodate religious beliefs, plaintiff must show that she has a bona fide religious belief that conflicts with an employment requirement, she informed defendant of this belief, and she suffered an adverse employment action. *See Ringhofer*, 102 F.4th at 900; *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003); *Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 575 (8th Cir. 2007). If plaintiff meets her prima facie burden, the burden then switches to defendant to show that accommodating plaintiff's religious beliefs would result in undue hardship. *See Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000). "'Undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023).

"The failure to reasonably accommodate an employee's religious practices and singling out religious adherents for inequitable treatment both constitute

religious discrimination under Title VII." *Cole*, 105 F.4th at 1114 (cleaned up). Plaintiff alleges both types of religious discrimination in this case.

Relying solely on out-of-circuit authority,[8] defendant first argues it is entitled to summary judgment on plaintiff's failure to accommodate claim because plaintiff allegedly "acted inconsistently with her sincerely held religious beliefs." ECF 68 at 8. According to defendant, because plaintiff wore a mask to an in-person event in October of 2020, it was entitled to question the sincerity of her religious beliefs in June of 2021 by requiring her to provide "documentation from one of your religion's spiritual leaders about the nature of the accommodation needed," which it insists "is permissible under the law."

Defendant's argument fails for several reasons. First, whether a professed religious belief is sincerely held is ordinarily a factual determination not capable of resolution at the summary judgment stage. *See Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004); *Ochs v. Thalacker,* 90 F.3d 293, 296 (8th Cir. 1996). Second, as mentioned above, defendant does not cite any authority from within the Eighth Circuit to support its position that "when a plaintiff does not provide the requested additional documentation, that failure alone is grounds for summary judgment." ECF 68 at 8.

---

[8] *Egelkrout v. Aspirus, Inc.* is not a case from the Western District of Missouri as cited on page 8 of defendant's brief in support of summary judgment. ECF 68 at 8. It is a case from the Western District of Wisconsin. *Egelkrout v. Aspirus, Inc.*, 2022 WL 2833961 (W.D. Wisc. Jul. 20, 2022).

Moreover, the out-of-circuit case that defendant does rely on, *Dockery v. Maryville Academy*, 379 F. Supp. 3d 704 (N.D. Ill. 2019), was decided well before the Eighth Circuit Court of Appeal's decisions in *Ringhofer* and *Cole*, which defendant does not address at all.  These cases are the Eighth Circuit's most recent pronouncements on claims of religious discrimination and liability for an employer's failure to accommodate religious exemptions to COVID-related vaccine and testing requirements.[9]

In *Ringhofer*, 102 F.4th at 903, the court reversed dismissal of Title VII claims stemming from plaintiffs' termination from their jobs due to religious objections to being vaccinated or their religious objections to routine testing in lieu of vaccination.  The court found that the district court erred when it concluded that plaintiffs' objections to the COVID vaccine were not sincerely held religious beliefs simply because they appeared related to medical and political beliefs and were not shared by all members of plaintiffs' professed faith of Christianity.  *Id.* at 902.

Similarly, in *Cole*, 105 F.4th at 1115, the court reversed dismissal of Title VII claims arising from a plaintiff's religious-based refusal to be vaccinated.   The court concluded that plaintiff had adequately pled that her employer unlawfully

---

[9] *Ringhofer* was decided on May 24, 2024.  Defendant's motion was filed on June 28, 2024. *Cole* was decided on June 28, 2024, well before defendant's reply brief was filed on July 22, 2024.

discriminated against her by requiring her to wear identification of her nonvaccinated status within the workplace and adhere to disparate masking requirements from vaccinated colleagues. *Id.* at 114.

While those cases were decided under a dismissal standard and this case is now before the Court on a motion for summary judgment, "the Court broadly interprets both holdings as standing for a unified proposition against judicial skepticism of pandemic-related Title VII claims. Courts are specifically counseled against drawing conclusions as a matter of law about the sincerity of religious objections to COVID vaccination or as to the nature of accommodation for those who eschew such vaccination on purportedly religious grounds." *Christiansen v. Honeywell International Inc.*, 2024 WL 3443881, at *1 (D. Minn. Jul. 17, 2024). Moreover, in the Eighth Circuit "perfect adherence" to a religious belief is not required to demonstrate that it is sincerely held. *See Holt v. Payne*, 85 F.4th 873, 879 (8th Cir. 2023) (in deciding a claim under the Religious Land Use and Institutionalized Persons Act of 2000, the district court erred in concluding that a religious belief was not sincerely held simply because plaintiffs did not demonstrate "perfect adherence" to the belief at issue).

Given that the sincerity of plaintiff's beliefs regarding masks and COVID vaccines does not depend on whether or not they are shared by a spiritual leader, *see Ringhofer*, 102 F.4th at 901-02, or whether she "perfectly adhered" to the tenet

not to wear a mask, *see Holt*, 85 F.4th at 879,[10] the Court cannot conclude as a matter of law that plaintiff's stated objections to wearing a mask and obtaining the COVID vaccine were not based on her sincerely held religious beliefs simply because she may have worn a mask at some point in the past[11] and did not provide documentation "from her spiritual leader about the nature of the accommodation needed."

Here, defendant does not contend that plaintiff failed to complete a specific religious exemption authorization form. Nor does it claim that it was not made aware, by virtue of plaintiff's numerous submissions, that plaintiff's stated religious beliefs conflicted with an employment requirement that she either wear a mask or obtain the COVID vaccine to attend CCON. Instead, defendant merely argues that it was permitted "under the law" to require plaintiff to submit additional documentation beyond her own personal attestation of her beliefs before

---

[10] *Holt* also makes clear that plaintiff does not need to "provide a justification based in religious text for a belief to be sincerely held," 85 F.4th at 880, although in this case plaintiff provided numerous citations to religious text in the form of scriptures from the Christian Bible to support her request for accommodation.

[11] The third reason defendant's argument fails is that the undisputed facts do not demonstrate as a matter of law that her past mask use, which occurred nine months before plaintiff's requested religious exemption, is inconsistent with plaintiff's sincerely held religious beliefs, as none of the documents submitted by the parties indicate when plaintiff developed her religious beliefs. Nor have the parties provided the Court with any deposition testimony from plaintiff (or anyone else) to review. Therefore, a reasonable factfinder could conclude, based on this record, that there was no inconsistency about plaintiff's decision to wear a mask in October of 2020 but not wear one in July of 2021. It will be up to a jury, not this Court, to consider this and other factors when deciding whether plaintiff's requests for accommodation were based on sincerely held religious beliefs.

it was required to reasonably accommodate her religious beliefs.

As stated above, "the law" referred to by plaintiff is not the law of the Eighth Circuit, nor is it found in the text of Title VII itself.  The Court also questions the viability of defendant's argument that the EEOC's Compliance Manual Section 12-I.A.3 vests it with authority to impose such an additional burden upon plaintiff's exercise of her religious beliefs, especially in light of recent Supreme Court jurisprudence.  *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).  Yet even the EEOC's compliance manual does not support defendant's position, as it instructs that where an employer requests additional information regarding the sincerity of an employee's religious belief, the information "need not, however, take any specific form.  For example, written materials or the employee's own first-hand verification may be sufficient . . . .  Further, since idiosyncratic beliefs can be sincerely held and religious, even when third-party verification is requested, it does not have to come from a clergy member . . . ."  EEOC Compliance Manual Section 12 IV.A.2.  Here, plaintiff submitted multiple documents to defendant which describe the nature of her religious beliefs in great detail and include numerous references to verses from the Christian Bible in support of her beliefs.  ECF 69-8, 69-9, 69-11,69-12, 69-20.  Plaintiff also provided a link to a sermon from a spiritual leader in support of her beliefs.

Under these circumstances, the Court cannot conclude that plaintiff's failure to accommodate claim fails as a matter of law simply because she failed to provide the specific document demanded by defendant – namely, "documentation from one of your religion's spiritual leaders about the nature of the accommodation needed." Accordingly, defendant's motion for summary judgment on the ground that plaintiff cannot demonstrate a prima facie claim of failure to accommodate is denied.

Next, defendant argues that plaintiff cannot succeed on her disparate treatment claims because she was not subjected to an adverse employment action.

An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment. *See Muldrow v. St. Louis*, 144 S. Ct. 967, 974 (2024). "The Supreme Court recently obviated the requirement—replete in [Eighth Circuit] case law—that the claimed injury be significant, material, or serious." *Cole*, 105 F.4th at 1114 (cleaned up) (alteration added). After *Muldrow*, plaintiff is only required to show "some harm respecting an identifiable term or condition of employment." 114 S. Ct. at 974.[12]

In the Eighth Circuit, "the denial of a requested religious accommodation absent a showing of undue hardship may itself constitute an adverse action." *Cole*, 105 F.4th at 1114. Thus, although plaintiff has alleged that she was constructively

---

[12] Defendant does not cite *Muldrow* or acknowledge its abrogation of Eighth Circuit authority respecting adverse employment actions.

discharged, her disparate treatment claims are not reliant solely upon a showing of constructive discharge and may proceed to trial if she shows "the denial of a requested religious accommodation absent a showing of undue hardship." *Id.*

Defendant mistakenly claims that plaintiff was not constructively discharged because it accommodated her request not to get vaccinated or wear a mask at CCON by telling her "she would not need to attend the conference" and "arrang[ing] for two co-workers to cover her job responsibilities" at CCON. ECF 68 at 11; ECF 76 at 9. Defendant claims that, despite this accommodation, plaintiff resigned anyway and therefore cannot demonstrate that she was constructively discharged.

Defendant's argument about the timing of plaintiff's resignation contradicts the undisputed evidence set out above. That evidence shows that plaintiff had made arrangements herself to participate in CCON virtually and her remote attendance had been confirmed by Brothers. ECF 73 Pl.'s Ex. R-18, ECF 73 Pl.'s Ex. B-34. Then, on the afternoon before CCON was scheduled to start, Brothers rescinded plaintiff's ability to attend CCON by remote option only, telling her that she "must attend [the Saturday night Staff working dinner] and the Sunday workshops in-person. You'll need to follow St. Louis City mask mandates when in-person." ECF 73 Pl.'s Ex. B-30. Plaintiff then resigned at 3:36 p.m. in response to Brothers' ultimatum. *Id.*

It was only *after* plaintiff resigned that Brothers told her — at 5:38 p.m. — that there was "no need" to attend and that she would arrange for other co-workers to cover plaintiff's presentations, "because you are choosing not to attend in-person for the working dinner and leading the Sunday workshops." ECF 73 Pl.'s Ex. B-30. And Brothers only made those arrangements after trying to once again pressure plaintiff into attending the Saturday and Sunday portions in person. *See id.* (Brother's 4:35 p.m. email seeking to "confirm you will be attending CCON in-person at the Saturday night Staff working dinner and in-person at the sub-committee workshop" because plaintiff had stated in her resignation letter that she would continue to provide two weeks of "dedicated, loyal service" to defendant). After plaintiff again reiterated that she could participate remotely in all aspects of the conference (including the Saturday night and Sunday portions) by virtue of the arrangements already in place and sought clarification that she did not need to attend "any portion of the CCON meeting," Brothers responded, "For the meeting to be effective, the requirements outlined in my original email stand. Unfortunately it's not a pick and choose – it's all or nothing to ensure the meeting is a success." *Id.* Defendant's misrepresentations about the evidence attempt to mask the genuine factual disputes that remain and preclude summary judgment on plaintiff's religious discrimination claims.

Defendant also argues that plaintiff was not constructively discharged

because she continued to work for two weeks after she resigned.  Before the
Supreme Court's decision in *Muldrow*, the Eighth Circuit held that a Title VII
constructive discharge claim requires plaintiff to show that "a reasonable person in
her situation would find the working conditions intolerable, and the employer
intended to force her to quit."  *Bell v. Baptist Health*, 60 F.4th 1198 (8th Cir. 2023)
(cleaned up).  To the extent these cases apply an abrogated definition of adverse
employment action, they are no longer applicable following *Muldrow*.  *See Collins
v. Union Pacific R.R. Co.*, 108 F.4th 1049, 1053 (8th Cir. 2024) (reversing
summary judgment because court applied pre-*Muldrow* caselaw regarding adverse
employment action).  As long as plaintiff can demonstrate that she suffered "some
harm respecting an identifiable term or condition of employment," *Muldrow*, 114
S. Ct. at 974, she can show an adverse employment action sufficient to avoid
summary judgment.

    As for plaintiff's concomitant obligation not to "to assume to worst and
jump to conclusions too quickly" by resigning "without giving defendant a
reasonable chance to work out" the problem, *see Tidwell v. Meyer's Bakeries, Inc.*,
93 F.3d 490, 494 (8th Cir. 1996) (cleaned up), the Court doubts this requirement
survives *Muldrow*, either.  Even if it does, the undisputed evidence here shows
that, before resigning, plaintiff gave defendant ample opportunity to provide a
reasonable accommodation to her request that she be exempt from COVID

vaccination and masking requirements at CCON due to her religious beliefs. In fact, plaintiff had secured herself a reasonable accommodation by arranging virtual participation at CCON, only to have it withdrawn by Brothers on the eve of the conference with the ultimatum that plaintiff attend in person and wear a mask. Even after resignation, plaintiff continued to offer her virtual participation in accordance with the prior arrangements. Under these circumstances, defendant cannot demonstrate that plaintiff was not constructively discharged as a matter of law. The motion for summary judgment is denied on that ground.

Finally, defendant argues that even if plaintiff can make out a prima facie case on her failure to accommodate claim, it is nevertheless entitled to judgment as a matter of law because accommodating her requested religious exemption would place an undue hardship on defendant. Defendant offers no evidence in support of this argument, relying instead on generalized health and safety concerns precipitated by the pandemic, together with local mask mandates then in effect, to argue that accommodating plaintiff's request for exemption of COVID vaccine and masking mandates for CCON would impose an undue hardship on defendant as a matter of law.

This argument, of course, ignores the evidence that plaintiff had already arranged for her religious beliefs to be accommodated through her virtual participation at CCON and that this accommodation had been acknowledged and

approved by defendant until the day before the conference was scheduled to start.
Given that defendant initially agreed to plaintiff's proposed accommodation of
virtual participation and now insists that it actually accommodated her religious
beliefs by having other employees perform her job duties, this Court declines
defendant's invitation to conclude as a matter of law that accommodating
plaintiff's religious beliefs imposed an undue hardship on defendant based solely
on the prevalence of COVID.  It will be up to a jury to decide if allowing plaintiff
to follow through with her virtual participation plan would have constituted an
"undue hardship" on defendant.

For these reasons, defendant's motion for summary judgment is denied as to
plaintiff's claims of religious discrimination.

Retaliation Claim

Plaintiff's retaliation claim fails, however, because she has presented no
evidence from which a rational factfinder could conclude that she opposed a
practice that Title VII forbids.  Title VII declares it unlawful for an employer to
discriminate against an employee or applicant for employment "because [she] has
opposed any practice made an unlawful employment practice by this subchapter,"
or because she has made a charge of discrimination or participated in any
proceeding under this subchapter. § 2000e-3(a).  As plaintiff filed her Charge of
Discrimination after she left her employment, only the "opposition clause" is at

issue in this case.  *See E.E.O.C. v. North Memorial Health Care*, 908 F.3d 1098, 1101 (8th Cir. 2018).  In the Eighth Circuit, "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation."  *Id.* at 1102.

Here, plaintiff has come forward with no evidence demonstrating that she communicated to defendant that its denial of her request for religious accommodation or treatment of her in connection with her request for religious accommodation was unlawful.  At most, on July 7, 2021, plaintiff expressed her "hope" that "pressure will not be applied in regard to face coverings/injections that go against my religion, religious beliefs."  ECF 69-12 (cleaned up).  Given that "the initial request for a religious accommodation simply does not implicitly constitute opposition to the ultimate denial of the requested accommodation," *see North Memorial Health Care*, 908 F.3d at 1101, and in the absence of any evidence demonstrating that plaintiff otherwise opposed a practice which Title VII forbids, defendants are entitled to judgment as a matter of law on plaintiff's retaliation claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [67] is granted only with respect to plaintiff's retaliation claim, and is denied in all other respects.

23

**This case will be set for trial by separate Order.**


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2024.