IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHERINE MARIA PINNER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:22-cv-00870-CDP |
| AMERICAN ASSOCIATION OF ORTHODONTISTS, | ) ) ) ) |
| Defendant. | ) ) |

## **DEFENDANT'S TRIAL BRIEF**

COMES NOW Defendant, American Association of Orthodontists ("AAO" or "Defendant"), by and through its attorneys, Fox Smith, LLC, and for its Trial Brief states as follows:

### **Procedural History**

Plaintiff's lawsuit was filed on August 22, 2022. The operative Amended Complaint was filed on September 26, 2022, in which Plaintiff alleged a Title VII religious discrimination claim for failure to accommodate, retaliation under Title VII, and a claim for violation of Plaintiff's constitutional rights. By Order of the Court on March 30, 2023, AAO's Motion to Dismiss was granted in part and Plaintiff's constitutional claim was dismissed. Subsequently, by Order of the Court on September 19, 2024, AAO's Motion for Summary Judgment was granted in part, further disposing of Plaintiff's retaliation claim. Only Plaintiff's Title VII claim for failure to accommodate/religious discrimination remains for trial. Plaintiff alleges being required to show proof of vaccination or to wear a face covering at an AAO event in July 2021 in the City of St. Louis in compliance with the City of St. Louis health mandate in effect at the time violated her religion.

**Background**

A. *The Parties*

Plaintiff was employed by Defendant American Association of Orthodontists ("AAO") as Director of Education from October 14, 2019 until August 11, 2021. Plaintiff's job description included attendance at in person conferences. Her position reported to the Vice President of Growth and Transformation at AAO, Mindi Brothers. At all relevant times, Plaintiff was a baptized and confirmed Roman Catholic. Further, the parties have stipulated that Plaintiff has stated her religion and sincerely held religious belief is American Traditional Christian, Croatian Roman Catholic. Plaintiff attends St. Joseph Croatian Church, which parish is a member of the Catholic Archdiocese of St. Louis.

AAO, located in St. Louis, Missouri, is the world's largest professional association for orthodontists.  In addition to advancing the practice of orthodontics, AAO seeks to assist its members in delivering the highest quality patient care.  AAO provides a variety of member benefits including advocacy, education, practice management, and offering the latest in clinical and practice innovations through local and national conferences and programs. At the time of Plaintiff's resignation, AAO had 58 employees. AAO has 19,000 dues paying members across the United States, Canada, and abroad.

B. *Chronology of Events*

AAO's overarching COVID-19 policy was to comply with the requirements and guidelines for COVID-19 prevention as set forth by St. Louis City and St. Louis County Departments of Health, and the CDC. This policy was in place since the early days of the pandemic in March 2020. The evidence will show that AAO's policies were not an issue for Plaintiff until after COVID-19

2

vaccinations became widely available to the public, allowing for reopening of AAO's office and a return to in-person conference attendance by AAO staff and members.

In particular, the evidence will show that prior to the availability of COVID-19 vaccines, Plaintiff was witnessed wearing a face covering at an October 31, 2020 "COOP" conference held by AAO at the Ritz Carlton in St. Louis County, Missouri, at which time a mask mandate was in place for the County. Plaintiff attended this function in compliance with the County mask mandate and made no objection—religious, disability, or otherwise.

On May 20, 2021, upon vaccines becoming widely available, AAO updated its policy in accordance with St. Louis City and St. Louis County guidelines to permit those that were fully vaccinated to show proof of vaccination to forego wearing a mask in public places. Plaintiff shared her disagreement about AAO's policy with AAO's Vice President of HR and Governance, Aimee Snyder-Jackson, based on efficacy and privacy grounds. Initially, Plaintiff raised no objection or concern based on her religion nor did Plaintiff request any accommodation. Notably, earlier the same week, on May 14, 2021, the Archdiocese of St. Louis issued a press release setting out a *nearly identical policy* which provided that "The mask mandate now only applies to all parish faithful who have not received a vaccination against the COVID-19 virus".

Subsequently, on June 15, 2021, Plaintiff emailed Ms. Snyder-Jackson and, for the first time, raised an objection on religious grounds to wearing a mask for the Committee on Conferences & Meetings (CCON) meeting to take place in person at the end of July in the City of St. Louis. Plaintiff claimed it was against "[her] religion and strongly held religious belief **and health** to cover her face/nose/mouth and/or restrict [her] breathing or airway." (Emphasis added.) Plaintiff's request did not ask for an accommodation or exemption from COVID-19 vaccination.

3

Following her June 15, 2021 email, Plaintiff submitted three letters to her employer between June 25, 2021 and July 4, 2021 containing her religious objection to utilizing a face covering. None of these letters raised any objection to COVID-19 vaccination as the alternative to a face mask. Plaintiff's sole objection—to masking—was that she could not cover her face because of the connotations it carried related to the spiritual practices of Muslim women and because she needed to be able to breathe. Based on Ms. Snyder-Jackson's understanding of Plaintiff's objection, Plaintiff was offered the option of a face mask with a clear panel. Plaintiff provided no response as to whether the accommodation was acceptable and reiterated her need to breathe. However, she did state her preference for a face shield which indicated that the visibility of the mask assuaged her concerns about covering her face. AAO declined a face shield in light of the available guidance at the time for avoiding viral spread to its employees and members. In an effort to accommodate Plaintiff's religion further and address her concerns, AAO requested Plaintiff provide documentation from her religious leader regarding the tenets of her faith and addressing whether the clear face mask would be a reasonable alternative. Plaintiff never provided such documentation.

Rather than address the adequacy of a clear face mask in response to Plaintiff's reported concern about covering her face, Plaintiff then for the first time, on or about July 7, 2021, raised an objection to any COVID-19 vaccination claiming she could not participate in "medical experiments"[1]. Plaintiff also did not provide medical documentation requested for AAO to alternatively consider a disability accommodation request related to her concerns about being able

---

[1] More specifically, she later elaborated in subsequent letter(s) that, among other things, she was religiously opposed to Transhumanism, to mean the use of MRNA vaccines. Note that this Court has already previously recognized case law in its own prior Order that has found that the Johnson & Johnson vaccine did not contain MRNA. *See* Court Doc No. 30, p. 1, n. 1.

4

to breathe in a face mask. Instead, she continued to attempt to secure such an exemption from masking on religious grounds asserting Bible Scripture regarding God breathing life into humans as her basis. At no time did Plaintiff provide any explanation that connected any prohibition to wearing a face mask to the cited Scripture about God breathing life into mankind. Plaintiff's lack of response was even more troubling to AAO since no explanation was forthcoming when Ms. Snyder-Jackson informed Plaintiff she was aware that Plaintiff had previously worn a face covering without issue at the October 2020 COOP conference and that Plaintiff should be able to breathe in a mask.

The CCON conference was a major event for AAO in the summer of 2021, with all AAO staff working the event expected to attend. The purpose of the conference was to address the planning of AAO's biggest event—its annual conference. The annual conference was the largest profit center of AAO outside of membership dues. The success of the "conference to plan the conference" was financially critical to AAO and its leadership.  As the Director of Education, Plaintiff was a content expert scheduled to lead in-person workshops at the Sunday sessions of CCON.

Upon learning that Plaintiff unilaterally intended to participate in this conference remotely, Plaintiff's supervisor, Mindi Brothers, emailed Plaintiff on July 20, 2021 and echoed concerns set forth by Libby Dischert, AAO's Director of Meetings & Sponsorships, about the overall effectiveness of Plaintiff participating remotely. Both Ms. Brothers and Ms. Dischert raised concern that it would not be feasible or effective for Plaintiff to participate in planned activities and present her portion of the program remotely.  Plaintiff's suggestion for her portion of the presentation was that all member attendees should be made to bring and participate from their laptops. Plaintiff did not adequately address how she was going to remotely manage multiple

5

subcommittees meeting at the same time or how AAO was to manage the program onsite with her remote attendance. As set forth further herein, there were technical and onsite issues that Plaintiff's personal preference for the remote platform did not alleviate.

In the interim, on July 23, 2021, the City of St. Louis issued a new mask mandate effective July 26, 2021, requiring all persons, regardless of vaccination status, to wear a face mask. *This Order did not include any religious exemption.* AAO staff were required to follow the new policy at the conference scheduled for July 30-August 1, 2021 in St. Louis City.

On or about July 28, 2021, Ms. Snyder-Jackson and another Human Resources employee met with Plaintiff via Zoom in an ongoing effort to address a potential accommodation for the conference. At the meeting, and in light of the City's face covering rule, Plaintiff was told that if she could get a note from a doctor that appropriately identified a diagnosis to be accommodated, they (HR) would do what they could to make an accommodation happen.

Ms. Snyder-Jackson also asked Plaintiff to explain to her why she was unable to wear a mask as a matter of religion. Ms. Snyder-Jackson told Plaintiff she wanted to understand if there was a rule she was not aware of, but that she was struggling to understand as she herself was a practicing Catholic and not aware of such a rule. Plaintiff did not address Ms. Snyder-Jackson's well-meaning confusion and devolved from tears to an angry political rant in which she accused AAO of not accommodating her *because of politics*.

On July 29, 2021, given the concerns with Plaintiff's remote attendance for certain activities at the conference, Plaintiff's supervisor Ms. Brothers notified Plaintiff that she would be permitted to attend portions of the conference remotely as she requested.  However, Plaintiff was asked to attend in person the Saturday night working dinner and the Sunday subcommittee sessions she was to lead and to wear a face covering in compliance with the St. Louis City mandate.

At no time did AAO or Ms. Brothers indicate to Plaintiff that her refusal to attend the conference as proposed would result in any form of discipline or termination. In fact, the evidence will show that neither HR nor Plaintiff's supervisor had considered terminating Plaintiff if she elected not to attend CCON in-person at all. AAO was still attempting to find some reasonable compromise that would work for both Plaintiff and the business needs. However, rather than comply with St. Louis City's mask mandate and continue discussing feasible options with AAO going forward, Plaintiff abruptly submitted her resignation. Plaintiff did not attend CCON. AAO made alternate arrangements for her job duties to be covered by two other AAO employees for the success of the conference. AAO took no action to terminate Plaintiff, and Plaintiff worked her two weeks' notice period.

## Legal Issues

### I. Plaintiff does not meet multiple elements of a Title VII religious discrimination claim.

The remaining issues for trial are very narrow. The threshold question is whether Plaintiff can even establish a *prima facie* case of religious discrimination based on the accommodations offered to her to attend AAO's CCON conference July 30-August 1, 2021 in the City of St. Louis. "To establish a prima facie case of religious discrimination for failure to accommodate, a plaintiff must show (1) she has a bona fide religious belief that conflicts with an employment requirement; (2) she informed the employer of this belief; and (3) she was disciplined for failing to comply with the conflicting requirement." *Jackson v. Lew*, 242 F. Supp. 3d 850, 866 (W.D. Mo. 2017); *see also Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 900 (8th Cir. 2024). Plaintiff can meet neither the first or third element of her claim as explained herein.

The approved Eighth Circuit jury instruction for religious discrimination, in this case, calls upon the jury to determine if it has been proved that the Defendant would have made the same

7

decision, i.e. denied Plaintiff's preferred accommodations to its COVID-19 policies, regardless of her religion. *See* Model Civ. Jury Instr. 8th Cir. 5.01 (2023). This is a simple question to answer in the affirmative. The evidence will show that AAO required *all* of its staff, regardless of religion, to attend CCON in person as necessary to perform their job duties. Title VII does not require an employer to enact a policy that would discriminate against some employees in order to enable the religious beliefs of others. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 85, 97 S. Ct. 2264, 2277, 53 L. Ed. 2d 113 (1977), *holding modified by Groff v. DeJoy*, 600 U.S. 447, 143 S. Ct. 2279, 216 L. Ed. 2d 1041 (2023) (as to meaning of undue burden).

Plaintiff cannot claim discrimination based on disparate treatment related to a work condition applied equally to all relevant employees. "The fact that all employees were treated identically rebuts any inference that [defendant's] handling of [plaintiff] was done with the intention of forcing [her] to resign." *See Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981). All AAO staff working the conference were required to attend CCON in person. AAO should not reasonably be required to make a blanket exception to in-person conference attendance which would impose additional responsibilities on other employees to give one employee favorable treatment to work remote based upon religion.

Notwithstanding that Plaintiff was never singled out based on her religion, Plaintiff also has no *prima facie* case of discrimination because Plaintiff *was* reasonably accommodated. "Title VII does not require an employer to give an employee a choice among several accommodations; nor is the employer required to demonstrate that alternative accommodations proposed by the employee constitute undue hardship." *Beadle v. Hillsborough Cnty. Sheriff's Dept.*, 29 F.3d 589, 592 (11th Cir. 1994). "The Supreme Court explained in *Ansonia* that a rule mandating that employees be given their preferred accommodations would be inconsistent with the intended

8

purpose of Title VII's reasonable accommodation provision, to foster 'bilateral cooperation' in resolving an employee's religion-work conflict." *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1031 (8th Cir. 2008)(citing *Ansonia Board of Education v. Philbrook,* 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986)).

The inquiry ends when an employer shows that a reasonable accommodation was afforded the employee. *Beadle*, 29 F.3d at 592. Further, while an accommodation is reasonable as a matter of law if it eliminates the conflict between employment requirements and religious practices, a reasonable accommodation *need not wholly eliminate* any conflict between religion and work. *Sturgill*, 512 F.3d at 1031. To the extent Plaintiff also complains that AAO incorrectly called its existing policies an accommodation, a pre-existing workplace policy <u>can</u> provide such an accommodation. *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 316 (4th Cir. 2008).

An employer who works diligently with the plaintiff to try to find an accommodation, even though it may take some time, has not failed to accommodate their religion. *See, e.g., Modicue v. Sw. Bell Tel. Co.*, No. 1:22 CV 174 SNLJ, 2024 WL 3486066, at *5 (E.D. Mo. July 19, 2024)(summary judgment for employer in COVID-19 case). In the *Modicue* case, the plaintiff complained that his employer was not able to promptly accommodate his religion with remote work to avoid wearing a face mask. *Id.* He sustained long periods of time on unpaid leave before he ultimately was able to receive a remote work accommodation and was terminated by his employer for performance reasons. *Id.* At *2-4. In total, it took from Modicue's accommodation request on June 25, 2020 until February 1, 2021 for Modicue to cease unpaid leave and commence working remotely. *Id.* At *2-3. In addition to this Court finding that the defendant worked diligently to offer Modicue options notwithstanding the duration of the interactive process and

9

Modicue's months of lost pay, the defendant was also granted summary judgment as the plaintiff had not shown that he was disciplined for refusing to wear a mask. *Id.* at *5.

Here, by comparison, AAO was still attempting to accommodate Plaintiff through the eve of the CCON conference, including a Zoom call to discuss options with her while complying with the City mask mandate. Plaintiff was asked only to attend a working dinner at CCON for which she need not wear a mask to eat and to attend her Sunday subcommittee sessions she was to lead, to which she promptly resigned. The clear mask option presumably resolved Plaintiff's concern with her face being seen.

The remaining question is whether Plaintiff's alleged religious objection to being able to breathe in a mask was reasonably accommodated in the circumstances, including whether the Plaintiff cooperated with AAO's repeated attempts to engage her in the interactive process. The germane question in the case is not the sincerity of her religious belief at all but rather the reasonableness of the offered accommodation in light of the information provided to AAO.

AAO is an organization with multiple Roman Catholic employees from different parishes, Croatian or otherwise, and AAO respects Plaintiff's religious beliefs. The parties have stipulated to Plaintiff's statement of her religion and sincerely held religious belief as American Traditional Christian, Croatian Roman Catholic, and AAO does not dispute that Plaintiff sincerely believes the Bible passages she has quoted to AAO. The focal problem lies not in her beliefs themselves but in the fact that Plaintiff never connected *why* her beliefs that God breathes life into her prohibited her from wearing any kind of mask, even the clear one offered. *Compare Winans v. Cox Auto., Inc.*, CV 22-3826, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023)("The Complaint does not even identify *why* Plaintiff objects to the use of fetal cell lines in the development of the COVID-19 vaccine; it merely asserts that fetal cell lines were, in fact, used by vaccine

10

developers."). As previously raised, Plaintiff also did act inconsistently in the past by wearing a face covering at the October 31, 2021 COOP event in-person and without objection. This inconsistency is important not for the sincerity of Plaintiff's beliefs but as it indicates that a face covering did not previously impede her ability to breathe on that prior occasion nor conflict with Plaintiff's religion which suggests a clear face mask was a presumptively reasonable accommodation in the circumstances.

Especially in the COVID-19 context, "Many courts have dismissed failure to accommodate religious discrimination claims because the plaintiffs failed to allege how or why their religious beliefs conflicted with an employment policy." *See Curless v. Evergy Metro, Inc.*, No. 23-00376-CV-W-WBG, 2023 WL 8582587, at *4 (W.D. Mo. Dec. 11, 2023)(plaintiff had Christian objection to masking that did not aver how or why his religious belief conflicted with the policy); *see also Id.* at *3. AAO certainly did not seek to discriminate against Plaintiff, and the proof therein is readily demonstrable in that Plaintiff clearly explained that she could not cover her face because of her objection to its Muslim connotations, and thus she was offered to wear a clear mask. However, Plaintiff has never articulated why a face mask in and of itself would conflict with her Scriptural teachings or her Church teachings as to her alleged inability to breathe.

Notwithstanding her church is characterized by its Croatian national heritage, the evidence will show that it is still a parish within the Roman Catholic Archdiocese of St. Louis. The Archdiocese's own policy promulgated in May 2021 required face coverings for the unvaccinated. Defendant need not argue with Plaintiff's stated beliefs as they fully support the logical conclusion that the offered accommodation was reasonable[2].

---

[2] To the extent Plaintiff has otherwise tried to object to face masks as experimental or unethical, those are generally inactionable beliefs under the law. "Isolated moral teachings" are insufficient for a religious discrimination claim. *Fallon v. Mercy Catholic Med. Ctr. of Se. Pennsylvania*, 877

Notably, Plaintiff's inquiries in her own correspondence about CCON accommodations was suggestive that a clear mask for short durations with breaks might be feasible. Given that Plaintiff had previously attended a 5-6 hour function with a lunch break in a face covering without objection, asking that Plaintiff endure a clear mask for only two 90-minute sessions split by a 15 minute break was an entirely reasonable accommodation to extend. The evidence will show that AAO diligently attempted to find an accommodation that would work for Plaintiff while also meeting its business needs. Unlike the *Modicue* plaintiff, however, Plaintiff abruptly resigned ceasing the interactive process. Plaintiff's unreasonable automatic resignation in response to AAO's offered accommodation is fatal to her claim. "Title VII is premised on bilateral cooperation". *See E.E.O.C. v. AutoNation USA Corp.*, 52 F. App'x 327, 329 (9th Cir. 2002); *see also Sturgill*, 512 F.3d at 1031. Judgment for defendant is proper when the employee does not make a good faith attempt to satisfy her needs through the means offered by the employer. *AutoNation*, 52 F. App'x at 329.

Likewise, Plaintiff was not disciplined for purposes of the third element of her claim, even though she claims constructive discharge. Plaintiff abruptly resigned following her supervisor's directions for the CCON conference. When she still refused to attend as outlined, AAO made arrangements for other employees to present and lead at CCON. The evidence will demonstrate that neither HR nor Plaintiff's supervisor had even considered whether Plaintiff might be terminated if she refused to attend CCON in-person at all. The intent was to see if a compromise would resolve Plaintiff's concerns and continue the discussions with Plaintiff. The requirement

---

F.3d 487, 492 (3d Cir. 2017); *see also Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000)(adopting the *Africa* factors discussed in the *Fallon* case, *infra*).

that Plaintiff attend select sessions of CCON in-person with a face covering was never communicated to Plaintiff as an ultimatum that would reasonably make Plaintiff fear for her job.

While Defendant recognizes that *Muldrow* seemingly lowered the threshold for an adverse employment action to require a plaintiff "show only some injury respecting her employment terms or conditions", the standard is in no way met in this case. *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 359, 144 S. Ct. 967, 977, 218 L. Ed. 2d 322 (2024). The logical conclusion from Plaintiff being unable to attend CCON due to her religion is that the injury—if not the alleged constructive discharge—could only be having to miss the conference itself, which would not appear to be any injury in light of Plaintiff's own prior suggestion of job redesign. There is no evidence that Plaintiff's job, pay, or other terms of employment were otherwise affected.

Additionally, Defendant does not believe *Muldrow* was meant to abrogate the Eighth Circuit's standard test for constructive discharge. The Western District of Missouri in *Hill v. McDonough*, articulated the enduring Eighth Circuit test for constructive discharge: "To prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in his situation would find the working conditions intolerable, and (2) the employer intended to force him to quit." *Id.* (citation omitted). *Hill v. McDonough*, No. 4:21-CV-00466-RK, 2023 WL 2061246, at *12 (W.D. Mo. Feb. 16, 2023), *aff'd*, No. 23-1797, 2024 WL 2890977 (8th Cir. June 10, 2024). The *Hill* case, while not a religion claim, has some parallels to Plaintiff's situation as Hill also became nervous and resigned rather than risk being terminated for an unacceptable performance review. *Id.* The court, in an opinion affirmed by the Eighth Circuit found "There is no evidence, however, that the result of his unacceptable performance review was termination, demotion, or reassignment. Moreover, Plaintiff cannot demonstrate constructive discharge having failed to demonstrate material adverse employment action on any of the same incidents." Plaintiff's own Title VII

13

predicament is highly analogous where she, like Hill, regrettably jumped to the conclusion that she needed to resign before being fired for refusing an offered accommodation. However, there is no evidence that Plaintiff would be subjected to such adverse employment action nor any basis for constructive discharge.

## II.     There was a demonstrable undue hardship to AAO.

Although Plaintiff was fully accommodated, Defendant can, in the alternative, establish an undue hardship as an affirmative defense. "Title VII requires an employer to reasonably accommodate the religious beliefs of its employees unless the employer can demonstrate that doing so would impose an undue hardship." *Harrell v. Donahue*, 638 F.3d 975, 979 (8th Cir. 2011). Again, the undue hardship issue is very narrow, because St. Louis City required a face covering for in person attendance without any religious exemption. For the reasons outlined in the facts above, remote attendance for the sessions Plaintiff was to lead at CCON was not administratively feasible as multiple witnesses will testify on behalf of AAO. The new standard for undue hardship under Title VII is "whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *See Groff v. DeJoy*, 600 U.S. 447, 471, 143 S. Ct. 2279, 2296, 216 L. Ed. 2d 1041 (2023). While the majority opinion focused primarily on there being more than "de minimis" financial cost, the concurring opinion by Justice Sotomayor also noted that hardship may also consist of hardship on employees. *Id.* at 476.

Plaintiff's proposal to attend remotely was not feasible nor was it reasonable for AAO to re-arrange the entire program to accommodate Plaintiff. The evidence will show that there were a plethora of reasons that Plaintiff remotely leading her sessions of CCON was unmanageable.

14

**Substantive and Procedural Issues**

The Court's Order Relating to Trial (Court Doc. No. 78) directs the parties to address any substantive and procedural problems anticipated. While Defendant is not anticipating any substantive problems other than discussed herein, Defendant points out the Title VII damages caps which substantially limit Plaintiff's ultimate requested recovery.

Apart from specific motions in limine, one procedural issue that Defendant foresees is that Plaintiff may attempt to introduce documents from the underlying Missouri Commission on Human Rights (MCHR) file on the basis the parties agreed that the 964-page file is an authentic copy of the record before the Commission at the administrative phase. Nevertheless, the introduction of documents from this file still requires that Plaintiff satisfy the rules of evidence for each document. At least one Circuit has dealt with this issue. The Fifth Circuit has determined regarding an EEOC file that while "the EEOC report may fall within the business records hearsay exception, the same cannot be said of the entire EEOC *file." Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329, 332 (5th Cir. 2007)(emphasis original). While the business records hearsay exception applies to the administrative body's report and determination, it does not apply to the underlying material collected as part of the investigation, which must be admissible (sic) on its own grounds. *Id.*

Defendant also notes that Plaintiff is pro se. It is unclear how Plaintiff plans to conduct her direct testimony or voir dire. However, "[a]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). At trial, Defendant will ask for any and all appropriate relief from the Court for unauthorized trial tactics to ensure a fair trial on the merits.

FOX SMITH, LLC


By:   /s/ Jessica M. Reis
Thomas J. Smith, #41353MO
tsmithfoxsmithlaw.com
Margaret D. Gentzen, #64862MO
mgentzen@foxsmithlaw.com
Jessica M. Reis, #69290MO
jreis@foxsmithlaw.com
One Memorial Drive, 12th Floor
St. Louis, MO 63102
(314) 588-7000
(314) 588-1965 (Fax)

Attorneys for Defendant


## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Via E-Mail and U.S. Mail

Katherine Maria Pinner
9852 Knollshire Drive
St. Louis, MO 63123
E-Mail: pinnerkay1285@aol.com

PLAINTIFF PRO SE

          /s/ Jessica M. Reis